Ivan A. Boatner (*Pro Hac Vice*)
Nicholas W. Diegel (*Pro Hac Vice*)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
Tel. (865) 549-7000
Fac. (865) 525-8569
iboatner@bakerdonelson.com
ndiegel@bakerdonelson.com

J. Michael Keyes (SBN 6885)
Benjamin D. Greenberg (*Pro Hac Vice*)
DORSEY & WHITNEY, LLP
701 Fifth Ave., Suite 6100
Seattle, Washington 98104-7043
Tel. (206) 903-8800
Fac. (206) 903-8820
keyes.mike@dorsey.com
greenberg.ben@dorsey.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VNS FEDERAL SERVICES, LLC,<br><br>    Plaintiff/Counter-Defendant,<br><br>-vs-<br><br>PORTSMOUTH MISSION ALLIANCE, LLC,<br><br>    Defendant/Counterclaimant. | Case No. 4:19-cv-00318-REB<br><br>**DEFENDANT PORTSMOUTH MISSION ALLIANCE, LLC's MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendant/Counterclaimant Portsmouth Mission Alliance, LLC ("PMA"), by and through

counsel, respectfully requests that the Court issue an Order dismissing the Complaint[1] filed by

---

[1] PMA seeks judgment on the pleadings only as to Plaintiff's Complaint and the claims set forth therein. PMA reserves the right to move for judgment on the pleadings as to PMA's Counterclaim at a later time.

Plaintiff/Counter-Defendant VNS Federal Services, LLC ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(c). In support of this Motion, PMA relies on the contemporaneously filed Memorandum in Support of Defendant Portsmouth Missions Alliance, LLC's Motion for Judgment on the Pleadings and states as follows:

1. Plaintiff filed its Complaint on August 9, 2019, in the District Court Seventh Judicial District for the State of Idaho, County of Bonneville. Plaintiff's Complaint asserts claims for Breach of Contract (Count I) and Breach of the Implied Duty of Good Faith and Fair Dealing (Count II).

2. PMA timely removed the Complaint to this Court by Notice of Removal. [Dkt. 1]. On October 25, 2019, PMA filed its Answer and Counterclaim in this matter. [Dkt. 21].

3. Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, "'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). A complaint is subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990), or where the allegations on their face "show that relief is barred for some legal reason." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

4. Plaintiff's causes of action arise from Subcontract No. PMA-S.07 (the "Subcontract"). [Dkt. 13-1, Ex. B, ¶¶ 10, 12, 56, 61]. The Subcontract was awarded to Plaintiff "under" Prime Contract No. DE-EM000-4062 (the "Prime Contract"), which the United States Department of Energy ("DOE") awarded to PMA on January 15, 2016. [*Id.*, ¶¶ 9-10]. PMA

2

subsequently executed the Subcontract on April 14, 2016 with non-party Wastren Advantage, Inc. ("WAI"). [*Id.*, ¶ 10]. After acquiring WAI's stock, Plaintiff assumed WAI's obligations under the Subcontract. [*Id.*, ¶ 12].

5.  Under the Prime Contract, PMA was to provide infrastructure support services to DOE and other contractors at DOE's nuclear site in Piketon, Ohio. [*Id.*, ¶¶ 5, 9]. The support services specified under the prime contract include services such as: Safeguards and Security, Computing, Telecommunications, and Cyber Security, Property Management, Records Management, Grounds Maintenance. True and correct excerpts[2] of the Prime Contract are attached hereto as **Exhibit 1**.[3] Section C of the Prime Contract provides a work statement that reflects "the entire scope of the Contract." **Exhibit 1**, § C.1.0. The goal of the Prime Contract is "to perform infrastructure work at the Portsmouth Site in support of DOE's D&D's mission[,]" and PMA agreed to "comply with all applicable Federal, State, and local laws and regulations . . . Regulatory Permits, and Agreements and Orders (See Section J, Attachments J-1 and J-2 and Section I-138, Department of Energy Acquisition Regulation (DEAR) Clause 970.5204-2 – Laws, Regulations and DOE Directives (DEC 2000))" in performing this work. **Exhibit 1**, §§ C.1.2 and I-138.

6.  Plaintiff's claim for breach of the Subcontract fails because PMA lawfully terminated the Subcontract in accordance with the Subcontract's terms. According to the

---

[2] The entire Prime Contract is over 1,000 pages in length, and much of the Prime Contract is irrelevant to the issues raised in the Complaint and in this Motion. Therefore, PMA has elected to only provide the Court with excerpts pertinent to this Motion.

[3] PMA acknowledges that "[g]enerally, a district court may not consider any material beyond the pleadings in ruling on a rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Although the Prime Contract was not an exhibit to Plaintiff's Complaint, the Court may consider the Prime Contract in ruling on this Motion because the Complaint specifically refers to the Prime Contract. *See Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982); [Dkt. 13-1, Ex. B, at ¶ 9]. Further, the Prime Contract is attached to PMA's Answer and Counterclaim and is, therefore, not outside the pleadings. [Dkt. 21-1].

Complaint, PMA breached the Subcontract by wrongfully terminating Plaintiff's Subcontract. [Dkt. 13-1, Ex. B, ¶ 54]. However, the Subcontract expressly provides, without reservation, that PMA could "by written notice of default to the SUBCONTRACTOR, terminate the whole or any part of th[e] Subcontract" in certain circumstances. [*Id.*, Ex. B, ECF p. 40, Article 20(a) to Subcontract Ex. A]. One of those circumstances enumerated in the Subcontract is "if SUBCONTRACTOR fails to perform any of the other provisions of this Subcontract in accordance with its terms…" *Id.* The Subcontract provides that PMA can then terminate the Subcontract in this circumstance if Plaintiff "does not cure such failure within a period of 10 days . . . after receipt of notice from the CONTRACTOR . . ." *Id.*

7.  A DOE audit of the Piketon facility's cyber security system in April of 2019 revealed that the cyber security system provided by Plaintiff was deficient and non-compliant. Plaintiff not only "failed to perform a provision of the Subcontract in accordance with its terms," it failed to perform in accordance with numerous other terms of the Subcontract, including Sections 1.2, C.3.3.1, 5.1, and provisions of the Prime Contract that flowed down pursuant to Section 4.1 of the Subcontract. [*See* Dkt. 13-1, Ex. B, ECF pp. 20-21, § 1.2; ECF p. 40, Article 20(a) to Subcontract Ex. A]. The Complaint further alleges that PMA sent written Notice of Default on May 21, 2019 in accordance with the Subcontract's default provision. [Dkt. 13-1, Ex. B, ¶¶ 33-34]. The Complaint admits that Plaintiff failed to cure all defaults identified in the Notice of Default within the ten-day contractual cure period. [*Id.*, ¶ 43]. Finally, the Complaint admits that PMA terminated the Subcontract after the ten-day cure period lapsed. [*Id.*, ¶¶ 44-45]. The pleaded facts taken as true, when applied to the plain terms of the Subcontract, can lead to only one conclusion: PMA lawfully terminated Plaintiff's Subcontract in compliance with all terms of the Subcontract.

4842-2566-8023
4844-0073-7463\1
4824-7832-1592v1
2939282-000005 04/01/2020

8.     Plaintiff's claim for breach of the implied duty of good faith and fair dealing fails because there is no requisite underlying breach of contract. The covenant of good faith and fair dealing is violated only when a party "violates, nullifies or significantly impairs any benefit of the . . . contract." *Jones v. Micron Tech., Inc.*, 923 P.2d 486, 491-492 (Ct. App. 1996); *see also Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 864 (1991) ("A violation of the implied covenant is a breach of the contract. It does not result in a cause of action separate from the breach of contract claims."). A claim for breach of the implied covenant must directly relate to breach of a specific contract term. *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 698 (2009) (holding no breach of implied covenant where Appellant could "identify no specific term within the operating agreement that Respondents breached"). Plaintiff's Complaint fails to identify any specific term or provision of the Subcontract breached by PMA. Further, as set forth above, Plaintiff itself breached the terms of the Subcontract by providing a non-compliant cyber security system. Plaintiff's breaches of the Subcontract with regard to the cyber security system were revealed to PMA in April of 2019 when DOE audited and found that the Piketon facility's cyber security system – provided and implemented by Plaintiff pursuant to the Subcontract – was deficient and failed to meet specifications, requirements and regulations flowed down from the Prime Contract and DOE. Therefore, Plaintiff cannot maintain a cause of action based on any purported subsequent breach by PMA.

9.     In addition, assuming *arguendo* that Plaintiff's breach of implied duty of good faith and fair dealing claim is based on PMA's termination of the Subcontract, Plaintiff's claim fails because Plaintiff impermissibly seeks to extend the termination provisions of the Subcontract beyond their written terms. Any allegation that PMA impaired Plaintiff's ability to cure its default within the ten-day cure period is undermined by Plaintiff's admission that it was "impossible" for

5

Plaintiff to cure within the contractually prescribed cure period. [Dkt. 13-1, Ex. B, ¶ 41(f)]. As evidenced by Federal Acquisition Regulation (FAR) Subpart 52.249-8, which is included in all fixed-price government contracts with a value in excess of $150,000, a ten-day cure period is a common provision in federal fixed-price contracts and subcontracts for services.[4]  As a sophisticated and experienced government contractor [Dkt. 13-1, Ex. B, ¶ 1], Plaintiff was well aware of the industry standard ten-day cure periods for default. Contrary to the Complaint's allegation that "PMA constructed a ten-day cure period," the Subcontract's ten-day cure period is a common contractual term that was the result of arm's length negotiations between two sophisticated parties. PMA's enforcement of this standard termination provision cannot constitute a violation of the duty of good faith and fair dealing, and Plaintiff's claim fails as a matter of law.

10.  Plaintiff's claims for breach of contract and breach of the implied duty of good faith and fair dealing also fail because Plaintiff was the first party to materially breach the Subcontract. Federal procurement law recognizes the first material breach defense: "[p]rior material breach is a federal common law defense asserted when a party breaches a contract after another party has already breached the same contract." *Laguna Construction Co., Inc. v. Carter*, 828 F.3d 1364, 1369 (Fed. Cir. 2016) (citation omitted). The doctrine "is 'based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties . . . if there has already been an uncured material failure of performance by the other party.'" *Christopher Village, L.P. v. U.S.*, 360 F.3d 1319, 1334 (Fed. Cir. 2004) (quoting Restatement (Second) of Contracts § 237b,

---

[4] A ten-day cure period is also included in the following types of federal government contracts valued at over $150,000: (1) cost reimbursement contracts and (2) fixed-price research and development contracts.  Personal services contracts may be terminated under the FAR with 15 days' written notice to the contractor. *See,* FAR Subparts 52.249-6, 52.249-9, and 52.249-12.

cmt. B (1981)). Plaintiff's Complaint admits that Plaintiff was the first to materially breach the Subcontract by failing to provide an adequate cyber security system in compliance with the terms of the Subcontract and Prime Contract. Therefore, Plaintiff is precluded from bringing a breach of contract claim against PMA for any purported breach subsequent to Plaintiff's breach.

11. For all the foregoing reasons, and as set forth more fully in the Memorandum in Support of Defendant Portsmouth Mission Alliance, LLC's Motion for Judgment on the Pleadings, PMA moves this Court for an Order entering a judgment on the pleadings and dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(c) and awarding PMA its attorneys' fees and costs in accordance with the parties' Subcontract.

Respectfully submitted,

/s/ Ivan A. Boatner
Ivan A. Boatner (TN Bar No. 015367)
Nicholas W. Diegel (TN Bar No. 034211)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, P.C.
265 Brookview Centre Way, Suite 600
Knoxville, Tennessee 37919
Tel. (865) 549-7000
Fac. (865) 525-8569
iboatner@bakerdonelson.com
ndiegel@bakerdonelson.com

J. Michael Keyes (SBN 6885)
Benjamin D. Greenberg (WSBA 44120)

DORSEY & WHITNEY, LLP
701 Fifth Ave., Suite 6100
Seattle, Washington 98104-7043
Tel. (206) 903-8800
Fac. (206) 903-8820
keyes.mike@dorsey.com

*Attorneys for Defendant/Counterclaimant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2020, I electronically filed the foregoing DEFENDANT PORTSMOUTH MISSION ALLIANCE, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS by using the CMIECF system, which caused counsel in the case who are registered with CMIECF users to be served via the United States District Court, District of Idaho's CMIECF system.

        Stephen P. Withee
        John S. Higgins
        FROST BROWN TODD LLC
        10 West Broad Street
        One Columbus Center, Suite 2300
        Columbus, OH 43215

        John A. Bailey, Jr.
        HAWLEY TROXELL ENNIS & HAWLEY LLP
        412 W. Center Street, Suite 2000
        P.O. Box 100
        Pocatello, Idaho 83204

This 1st day of April, 2020.

                                      */s/ Ivan A. Boatner*
                                      Ivan A. Boatner (TN Bar No. 015367, DC Bar No. 1657608)

4842-2566-8023
4844-0073-7463\1
4824-7832-1592v1
2939282-000005 04/01/2020