UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VNS FEDERAL SERVICES, LLC, | Case No. 4:19-cv-00318-BLW. |
| Plaintiff/Counter-Defendant, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| PORTSMOUTH MISSION ALLIANCE, LLC, | |
| Defendant/Counterclaimant, | |

## INTRODUCTION

Pending before the Court is Defendant's Motion for Judgment on the Pleadings. Dkt. 26. The motion is fully briefed and ripe for decision. Pursuant to Local Civil Rule 7.1(d)(1)(B), the Court has determined oral argument is not necessary to resolve the motion. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In the pending motion, Portsmouth Mission Alliance (Portsmouth) argues VNS Federal Services, LLC's (VNS Federal) complaint should be dismissed for failure to state a claim upon which relief may be granted. Dkt. 26 at 2.

In the complaint, VNS Federal asserts that Portsmouth breached the terms of

a subcontract related to work the parties were performing at a gaseous diffusion plant operated by the Department of Energy (DOE) in Piketon, Ohio. *Am. Compl.*, Dkt. 13.

In 2016, the DOE awarded Portsmouth a prime contract for the provision of infrastructure support services at the plant. *Id.* at 3. The support services fit into three general scopes of work: (1) cybersecurity services; (2) records management; and (3) safety and security. The prime contract required Portsmouth to comply with "all applicable Federal, State, and local laws and regulations," and to comply with "Regulatory Permits, and Agreements and Orders" from the DOE within the provision of the support services. Dkt. 26 at 3.

To perform the work, Portsmouth enlisted the services of a third party, Wastren Advantage Inc. Dkt. 13 at 3. Under the subcontract, Wastren agreed to perform each of the three scopes of work set forth in the DOE prime agreement on behalf of Portsmouth. In 2018, VNS Federal acquired Wastren's stock and assumed Wastren's obligations under the subcontract with Portsmouth. *Answer,* Dkt. 21 at 3. Pursuant to the terms of a renegotiated subcontract with VNS Federal, Portsmouth assumed the safety and security scope of work for the plant. Dkt. 13 at 3. VNS Federal remained directly responsible for performing the other two scopes of work—cyber security and records management. *Id.* at 4.

In early 2019, the DOE informed Portsmouth and VNS Federal that DOE representatives would perform an audit of the facility's cyber security system in April. *Id.* Portsmouth and VNS Federal began meeting in February to prepare for the audit by discussing the system, expectations for the audit, and how to handle any potential issues. *Id.*

In April 2019, the DOE conducted an audit of the facility's cyber security systems. Dkt. 21 at 5. After the audit, the DOE performed a debriefing with VNS Federal and Portsmouth. *Id.* The DOE identified 10 items that needed attention and requested a Corrective Action Plan (CAP) to address the items. *Id.* VNS Federal and Portsmouth met to create the CAP, which included a timeline to address each of the issues. *Id.* at 6. During that process, Portsmouth allegedly added two additional items to the 10 item list. Dkt. 13 at 5. VNS Federal used a spreadsheet to track its corrective work on the items. *Id.* Portsmouth also enlisted the services of a project manager from one of its affiliate companies to create a Recovery Schedule for the work. *Id.* According to VNS Federal, the average time built into the plan to address each issue was 214 days. *Id.* VNS Federal asserts that, by May 31, 2019, it had addressed eight out of the DOE's 10 identified items. *Id.*

VNS Federal asserts that, despite its progress and compliance with the timeline built in conjunction with Portsmouth, Portsmouth "began a scheme to

MEMORANDUM DECISION AND ORDER - 3

improperly terminate" VNS Federal. *Id.* at 6. VNS Federal asserts Portsmouth did so by refusing it access to information, thereby reducing VNS Federal's ability to address the DOE issues. *Id.* at 7. VNS Federal asserts also that, before Portsmouth notified it of the alleged default of the subcontract, Portsmouth had begun negotiating with a rival subcontractor to replace VNS Federal. *Id.* at 6. VNS Federal asserts the rival subcontractor was brought on, and on May 20, 2020, began posting job openings for cybersecurity positions at the plant. *Id.* at 8.

Meanwhile, on May 21, 2019, Portsmouth sent VNS Federal a notice of default of the subcontract, demanding that VNS Federal cure the deficiencies identified by the DOE. Dkt 13 at 6. The notice gave VNS Federal 10 days to cure the default. *Id.* VNS Federal alleges it was able to cure 75 percent of the breaches identified by the DOE within the ten-day cure period. *Id.* at 10–11. VNS Federal also argues it did not cure the remaining 25 percent of breaches due to impossibility and the fact that one issue had become moot. *Id.* On June 7, 2020, Portsmouth terminated its subcontract with VNS Federal, citing VNS Federal's failure to cure all breaches within the ten-day period. Dkt. 21 at 9.

In the present motion, Defendant Portsmouth argues the plain terms of the subcontract with VNS Federal preclude its breach of contract-based claims. *Mem. Supp. Mot. J. Pleadings*, Dkt. 27. Specifically, Portsmouth argues that, the

subcontract expressly provides it could "by written notice of default to [VNS Federal], terminate the whole or any part of the Subcontract" under certain circumstances. Dkt. 27 at 7. Portsmouth asserts one of those circumstances included any failure by VNS Federal "to perform other provisions of the Subcontract in accordance with its terms." *Id.* Portsmouth argues that, because VNS Federal was responsible for the cybersecurity system, it was responsible for complying with the DOE's regulations. *Id.* Portsmouth continues that, because VNS Federal failed to comply with the regulations and then failed to cure the breach within the 10 days provided under its subcontract, VNS Federal materially breached the subcontract. *Id.* at 8. Portsmouth argues the alleged breach gave it a clear right to exit the subcontract with VNS Federal. *Id.*

Stated briefly, Portsmouth argues VNS failed to state a claim for breach of contract because there was no breach by Portsmouth. Dkt. 27. Relatedly, and in the alternative, Portsmouth argues that even if it breached the subcontract, VNS Federal's breach occurred first, and thus the breach of contract claim is barred by the "first material breach" doctrine. *Id.* at 11–12.

The Court will analyze the merits of these arguments below.

## LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for

judgment on the pleadings should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] ... in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

In determining whether a complaint states a cognizable claim under Rule 12(c), courts apply the same legal standards applicable to motions brought under Rule 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n.4 (9th Cir. 2011) ("we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal may be based on the lack of a cognizable legal

theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Judgment on the pleadings is appropriate when there are no disputes to material facts, *Hal Roach Studios*, 896 F.2d at 1550, or when the facts are insufficient to support a cognizable legal theory, *Balistreri*, 901 F.2d at 699.

## DISCUSSION

Portsmouth's motion for judgment on the pleadings fails because (1) VNS Federal has alleged sufficient facts to support the elements of its contract-based claims and (2) because there are genuine disputes of material fact regarding the issue of breach of contract.

### 1. Sufficiency of Contract-Based Claims

To state a successful breach of contract claim, a party must prove (1) the existence of the contract; (2) the breach of the contract; (3) that the breach caused damage: and (4) the amount of the damages. *Edged In Stone, Inc. v. Nw. Power Sys., LLC*, 321 P.3d 726, 730 (Idaho 2014).

On a motion for judgment on the pleadings, the Court must construe all facts in a light most favorable to the non-moving party—here VNS Federal. In its complaint, VNS Federal alleges that Portsmouth breached the subcontract by wrongfully terminating it, and that the termination caused damages in an amount of

no less than $1,830,000. There is no dispute regarding the existence of the subcontract between Portsmouth and VNS Federal. Further, damage due to VNS Federal's loss of the work under the contract is easily assumed at this stage of proceedings. Thus, the question before the Court is whether VNS there is a genuine issue of material fact as to whether Portsmouth breached the subcontract.

In its motion, Portsmouth argues the undisputed facts show the terms of the subcontract allowed it to terminate the agreement in the event of a material breach by VNS Federal. Portsmouth argues also that VNS Federal admitted it failed to provide a cure to all aspects of its breach within the ten-day period provided under the subcontract with Portsmouth. Thus, from Portsmouth's view, VNS Federal has admitted a material breach and, in the vernacular, it's game over.

However, as the background detailed above shows, there is a clear disagreement between the parties as to whether VNS Federal was entitled to continue its efforts to cure according to the CAP and other remedial schedules, or, whether it only had 10 days upon notice by Portsmouth—despite the earlier-made remediation plan and schedules. For example, VNS Federal disagrees with Portsmouth on which, if any, provisions of the subcontract were breached, whether any of the alleged failures to perform constituted a material breach of the subcontract, whether there was failure to cure during the ten-day cure period, and

whether and to what extent Portsmouth interfered with VNS Federal's ability to cure.

These factual disagreements are material. Thus, the Court finds it would be premature to rule on the merits of VNS Federal's breach of contract claim without the full benefit of discovery.

Similarly, the Court finds that VNS Federal has sufficiently plead its claim for breach of the implied covenant of good faith and fair dealing. "The implied covenant of good faith is violated when a party 'violates, nullifies or significantly impairs any benefit of the . . . contract.'" *Jones v. Micron Tech., Inc.*, 129 Idaho 241, 247, 923 P.2d 486, 492 (Ct. App. 1996) (quoting *Idaho First National Bank v. Bliss Valley Foods,* 121 Idaho at 289, 824 P.2d at 864). Here, the subcontract imposed a ten-day cure period in its explicit terms. However, VNS alleged that Portsmouth actively engaged in preventing it from taking advantage of this ten-day cure period. For example, VNS claims it was denied important reports, could not communicate with the DOE, and that Portsmouth refused to buy hardware necessary to cure default. These allegations are sufficiently pled to show Portsmouth may have impaired a benefit of the subcontract and to allow the case to move through discovery.

Finally, Portsmouth argues that VNS Federal invalidated its breach claims

by arguing that it was impossible to cure each of the 12 items identified through the audit process within the ten-day limit regardless of Portsmouth's interference. However, VNS Federal also claimed that without Portsmouth's interference it could have cured all 12 items. VNS Federal's alternative statements do not invalidate its pleadings. Federal Rule of Civil Procedure 8(d)(2) allows for there to be alternative statements and claims, while Rule 8(d)(3) permits claims to be inconsistent with each other. According to Rule 8(d)(2), if one of the alternative statements is sufficient, the pleading is sufficient.

### 2. Material Breach Defense

In the alternative, Portsmouth argues that even if it breached the subcontract, VNS Federal's breach occurred first, and thus the breach of contract claim is barred by the first material breach doctrine. The first material breach doctrine is an affirmative defense that generally involves a fact-intensive inquiry—making it an improper basis to grant a motion for judgment on the pleadings. "Prior material breach is a federal common law defense asserted when a party breaches a contract after another party has already breached the same contract." *Laguna Constr. Co., Inc. v. Carter*, 828 F.3d 1364, 1369 (Fed. Cir. 2016). For this defense to be valid, there must be a material breach. If a breach is immaterial, the right of the parties remain unchanged and the contract remains enforceable. *Aldape v. Lubcke*, 688 P.2d 1221, 1222–23 (Idaho Ct. App. 1984). One looks to both Federal law and

Idaho common law to determine whether the uncontested facts show a material breach. As stated above, there are genuine issues of material fact related to the alleged breaches in this case which squarely preclude judgment without the aid of further discovery.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Judgment on the Pleadings (Dkt. 26) is **DENIED**.

DATED: July 23, 2020

_____
B. Lynn Winmill
U.S. District Court Judge